## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CARLA B. SPARKLER,** | **CIVIL ACTION** |
| **Plaintiff,** | |
| **v.** | |
| **HOME INFUSION SOLUTIONS, LLC** | **NO. 13-3969** |
| **d/b/a HOME SOLUTIONS INC.,** | |
| **Defendant.** | |

**DuBois, J.**                                                      **December 6, 2013**

### MEMORANDUM

### I.        INTRODUCTION

Plaintiff, Carla B. Sparkler, filed this employment-discrimination suit against defendant, Home Infusion Solutions, LLC d/b/a Home Solutions Inc. ("Home Solutions").   Plaintiff's claims arise from defendant's termination of plaintiff's employment after she sought treatment for alcoholism.   Specifically, plaintiff alleges that defendant discriminated and retaliated against her on the basis of her disability and wrongfully withheld her annual commission for 2011.   Presently before the Court is defendant's Motion to Transfer Venue to the District of New Jersey pursuant to 28 U.S.C. § 1404.   For the reasons stated below, the Court denies defendant's Motion.

### II.       BACKGROUND

Defendant is a Delaware corporation with a principal place of business in Northfield, New Jersey.   Decl. of Paul Sorensen ¶¶ 3-4 (Document No. 12-2) [hereinafter Sorensen Decl.]. Defendant regularly does business in the Commonwealth of Pennsylvania and maintains an office in Horsham, Pennsylvania.   Am. Compl. ¶¶ 3-4 (Document No. 14).

Pursuant to an employment contract dated September 14, 2006, defendant hired plaintiff as its Vice President of Managed Care.   Decl. of Laura Scully, Esq. Ex. B at 1 (Document No. 12-5)

[hereinafter Emp't Agmt.].   Plaintiff was an executive-level employee.   Sorensen Decl. ¶ 3.   As

such, she was a member of defendant's New Jersey-based Home Solutions's Executive Group,

along with Tim Timbrook — defendant's owner and Chief Executive Officer — and Paul

Sorensen   — defendant's Chief Financial Officer.   *Id.* ¶¶ 3-4.   Timbrook directly supervised

plaintiff from the inception of her employment until August 2011, during which time Timbrook

allowed plaintiff to work from her Pennsylvania home office.   *See* Am. Compl. ¶ 28; Sorensen

Decl. ¶ 6; Decl. of Carla B. Sparkler ¶ 6 (Document No. 13-2) [hereinafter Sparkler Decl.].

Plaintiff alleges that under Timbrook's supervision, she "consistently received positive annual

performance evaluations and met or exceeded her targets."   Am. Compl. ¶ 31.

In August 2011, plaintiff began reporting directly to Sorensen.   *Id.* ¶ 29.   As plaintiff's

new direct supervisor, Sorensen assigned plaintiff the additional responsibility of assisting

defendant's New Jersey billing department with its collection, authorization, and billing processes,

starting in September 2011.   Am. Compl. ¶ 6; Sorensen Decl. ¶ 6; Sparkler ¶ 7.   Plaintiff

thereafter worked from a conference room in the New Jersey office during normal business hours.[1]

Sparkler Decl. ¶ 8.   Plaintiff asserts that she "received the highest rating possible in several

categories" on her October 2011 performance evaluation.   Am. Compl. ¶ 31.

On December 16, 2011, plaintiff advised Sorensen that she would have to take a leave of

absence between Christmas and New Year.   *Id.* ¶ 32.   On December 25, 2011, plaintiff checked

herself into to a Pennsylvania inpatient facility for alcoholism treatment.   *Id.* ¶ 34.   While a

---

[1] The parties dispute whether and to what extent plaintiff continued to work from her Pennsylvania home office after September 2011.   Plaintiff asserts that between September 2011 and December 2011, she continued to work from Pennsylvania, with defendant's knowledge and tacit approval, on nights and weekends.   Sparkler Decl. ¶¶ 8-10.   Without denying that plaintiff continued to work from home after plaintiff began reporting to him, Sorensen states that he is "not aware of any occasions on which Ms. Sparker telecommuted from her home after she began reporting to [him]."   Sorensen Decl. ¶ 6.

patient in the Pennsylvania medical facility, plaintiff spoke with defendant's Human Resource Director, Desiree Polumbo, on January 3, 2013 and requested that she be granted FMLA leave. *Id.* ¶ 36.   On January 4, 2012, plaintiff's treatment facility faxed medical verification of her treatment to defendant, as requested by Polumbo, and plaintiff informed Sorensen by telephone of her condition, treatment, and expected length of absence.   *Id.* ¶¶ 37-39.   On January 5, 2012, defendant notified plaintiff that her employment was terminated, effectively immediately, because of "her alleged failure to perform her duties in connection with the negotiations concerning a certain provider contract amendment."   *Id.* ¶¶ 40-41.

Plaintiff alleges that defendant's stated reason for her termination was pretextual and that defendant discriminated and retaliated against her on the basis of her disability in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.*, the Pennsylvania Human Relations Act (PHRA), 43 P.S. § 951 *et seq.*, and the New Jersey Law Against Discrimination (NJLAD), N.J.S.A. 10:5-1 *et seq.*   Plaintiff also alleges breach of contract and violations of the Pennsylvania Wage Payment and Collection Law (PWPC), 43 P.S. 260.1 *et seq.* on the ground that defendant wrongly withheld plaintiff's annual commission for 2011.

### III.      LEGAL STANDARD

Defendant seeks to transfer this case to the District of New Jersey pursuant to 28 U.S.C. § 1404(a).   Section 1404(a) permits transfers of venue, stating that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."   *Id.*   Once a court determines that venue would be proper in another district, the court must "consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of

justice be better served by transfer to a different forum."  *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995) (quoting 15 Wright, Miller & Cooper, *Federal Practice and Procedure* § 3847 (2d ed. 1986)).

The party moving to transfer venue bears the burden of establishing the need for the transfer.  *Id.*  Although "[t]he decision to transfer is in the court's discretion, . . . a transfer is not to be liberally granted."  *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (quoting *Handlos v. Litton Indus., Inc.*, 304 F. Supp. 347, 352 (E.D. Wis. 1969)).

## IV.    DISCUSSION

Section 1404(a) presents the Court with two questions: (1) whether plaintiff could have brought this case in the District of New Jersey; and (2) whether transfer is in the interest of justice. The Court addresses each of these questions in turn.

### A.  Venue is Proper in the District of New Jersey

Absent consent of the parties, 28 U.S.C. § 1404 only permits transfer of an action to another "district or division where it might have been brought."   "A district is one in which an action 'might have been brought' if that district has (1) subject matter jurisdiction over the claims; (2) personal jurisdiction over the parties; and (3) is a proper venue."  *Yang v. Odom*, 409 F. Supp. 2d 599, 604 (D.N.J. 2006) (citing *Shutte*, 431 F.2d at 24).   There is no dispute that the District of New Jersey has the requisite jurisdiction over this case and is a proper venue for adjudication. Accordingly, the Court turns to the question of whether transfer is in the interest of justice.

### B.  Transferring This Case to the District of New Jersey Is Not in the Interest of Justice

The Third Circuit has identified a number of public and private interests that courts are to consider in deciding whether transfer is in the "interest of justice."  *See Jumara*, 55 F.3d at 879.

The Court addresses the two sets of interests in turn.   "Private interests" include plaintiff's forum preference as manifested in the original choice; defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses; and the location of books and records.   *Id.*   "Public interests" include the enforceability of the judgment; practical considerations that could make the trial relatively easier, more expeditious, or less expensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.   *Id.* at 879-80.

a.   Private Interests

i.   *Parties' Choices of Venue*

In the Third Circuit, a plaintiff's choice of forum is a paramount consideration in deciding a motion to transfer venue and should not be lightly disturbed.   *Endless Pools, Inc. v. Wave Tec Pools, Inc.*, 362 F. Supp. 2d 578, 586 (E.D. Pa. 2005) (citing *Shutte*, 431 F.2d at 25).   Moreover, a plaintiff's choice of his or her home forum is entitled to especially great deference.   *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981).

Defendant argues that the ordinary presumption in favor of a plaintiff's chosen forum is vitiated in this case by a forum-selection clause in plaintiff's employment contract, which manifests the parties' original intent to litigate in New Jersey.   Defendant is correct that "where the plaintiff has already freely contractually chosen an appropriate venue,"   *see Jumara*, 55 F.3d at 880,   "the plaintiff's choice of forum merits no weight," and "a district court should ordinarily transfer the case to the forum specified in that clause."   *At. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, — S. Ct. —, No. 12-929, 2013 WL 6231157, at *11 (U.S. Dec. 3, 2013).

5

In this case, the forum-selection clause in plaintiff's employment agreement states, "[V]enue for any litigation disputes pursuant to th[e] agreement shall be brought in the Superior Court of New Jersey, Atlantic County."   Emp't Agmt 9.   As worded, this contractual provision plainly contemplates litigation in the Superior Court of New Jersey Atlantic Court, not the federal district court to which defendant seeks transfer.[2]   *See, e.g.*, *Intermountain Sys., Inc. v. Edsall Const. Co.*, 575 F. Supp. 1195, 1198 (D. Colo. 1983) (holding that a defendant may not avail itself of a forum-selection clause that identifies a specific state court to seek transfer to a federal district court not contemplated by the agreement).   Thus, the Court rejects defendant's argument that the forum-selection clause supports transfer to the District of New Jersey.

Because the forum-selection clause in plaintiff's employment agreement does not bear upon defendant's Motion to Transfer Venue, the Court gives plaintiff's current choice of forum, the Eastern District of Pennsylvania, substantial weight.   Although the Court is mindful that it must also consider defendant's preference to litigate this suit in the District of New Jersey, *Jumara*, 55 F.3d at 879, defendant's choice is entitled to considerably less weight than is plaintiff's.   *Coppola v. Ferrellgas, Inc.*, 250 F.R.D. 195, 198 (E.D. Pa. 2008).   On balance, the parties' choices of venue militate against transfer.

### ii.   Where the Claim Arose

Next, the Court must consider "where the relevant discriminating activities or other activities relevant to the claims at issue took place."   *Dilmore v. Alion Sci. & Tech. Corp.*, No. 11-cv-72, 2011 WL 1576021, at *5 (W.D. Pa. Apr. 21, 2011).   Defendant argues that plaintiff's

---

[2] Although the Supreme Court held very recently that the doctrine of *forum non conveniens* is the correct mechanism for enforcing a forum-selection clause that points to a nonfederal forum, *see At. Marine Const. Co.*, 2013 WL 6231157, at *10, in its Motion to Transfer Venue, defendant specifically seeks transfer to the District of New Jersey.

claim arose in New Jersey because, *inter alia*, (1) plaintiff was formally assigned to the New Jersey office, (2) plaintiff was physically stationed in New Jersey in the final months of her employment, and (3) plaintiff's supervisors terminated her employment from their New Jersey offices.   Each of those allegations is correct.

The Court, however, concludes that a substantial number of relevant facts also transpired in Pennsylvania.   Plaintiff began working from her Pennsylvania home office in 2006 and continued to do so with her supervisor's knowledge and permission until at least September 2011. Plaintiff's performance during these years is relevant to plaintiff's argument that the reason for her termination was pretextual.   Further, it is pertinent that "most of [the] work for which [plaintiff] earned a commission/bonus in 2011 was performed out of [her] home office in Philadelphia, Pennsylvania," *see* Sparkler Decl. ¶ 11, given that plaintiff alleges that she did not receive her commission for that entire year.   Finally, plaintiff sought treatment, requested FMLA leave, and received word of her termination while in Pennsylvania.   *See, e.g.*,   *Dilmore*, 2011 WL 1576021, at *6 ("[A]s Defendant delivered its decision to terminate Plaintiff's employment through correspondence directed to Plaintiff's residence in Pennsylvania, the underlying basis of Plaintiff's age discrimination claim, i.e., his termination, occurred in this district.").

It is clear that relevant events in this case occurred in both the Eastern District of Pennsylvania and the District of New Jersey.   The Court thus concludes that this factor is neutral. *See, e.g.*, *Berg v. Aetna Freight Lines*, No. 07-cv-1393, 2008 WL 2779294, at *3 (W.D. Pa. July 15, 2008) (holding that where events occur in multiple districts, this factor is neutral); *Fetter v. N. Am. Alcohols, Inc.*, No. 06-cv-4088, 2007 WL 551512, at *4 (E.D. Pa. Feb. 15, 2007) (same).

### iii.   Convenience of the Witnesses

Next, defendant argues that it would be inconvenient for witnesses to travel to the Eastern

7

District of Pennsylvania for depositions and trial.   When ruling on a § 1404 motion, a court may only consider the convenience of witnesses "to the extent that the witnesses may actually be unavailable for trial in one of the fora."   *Jumara*, 55 F.3d at 879.   As defendant has not submitted any evidence that potential witnesses would be unavailable for trial or depositions in the Eastern District of Pennsylvania, defendant has failed to meet its burden on this issue.   *Brenner v. Consol. Rail Corp.*, No. 09-cv-1574, 2009 WL 2710241, at *3 (E.D. Pa. Aug. 26, 2009) ("It is Defendants who have the burden of identifying witnesses who would be unavailable at trial.").

### iv.   Convenience of the Parties

The Court also rejects defendant's assertion that the convenience of the parties weighs in favor of transfer.   "Given the close proximity between the District of New Jersey and the Eastern District of Pennsylvania, . . . considerations [of convenience] are neutral and do not weigh against transfer."   *Simmens v. Coca Cola Co.*, No. 07-cv-668, 2007 WL 2007977, at *3 (E.D. Pa. July 5, 2007).   Finally, while defendant asserts that the District of New Jersey would be more convenient for both parties' counsel, "[t]he convenience of counsel is not a factor to be considered." *Solomon v. Cont'l Am. Life Ins. Co.*, 472 F.2d 1043, 1047 (3d Cir. 1973).

### v.   Location of Books and Records

The last private factor is the location of books and records.   Defendant asserts that the relevant documents are located in New Jersey.   On this issue, a Court may consider the location of books and records "only to the extent they may be unavailable in one fora."   *Leatherman v. Cabot Oil & Gas Corp.*, No. 12-cv-3783, 2013 WL 1285491, at *3 (E.D. Pa. Mar. 29, 2013) (quoting *Cole v. McGuire Bros. Const., Inc.*, 2005 WL 3077902, at *7 (D.N.J. Nov. 15, 2005)).   Even if defendant's records are presently located in New Jersey, the Court has no reason to doubt defendant's ability to transport these records to the Eastern District of Pennsylvania for trial.

Accordingly, this factor weighs neither for nor against transfer.

### b. Public Interests

#### i. States' Interests in Deciding Local Controversies

Turning to the public factors, defendant argues that transfer is necessary to protect New Jersey's interest in deciding local controversies.   However, both New Jersey and Pennsylvania have interests at issue in this dispute.   While New Jersey has an interest in regulating discriminatory practices of employers within its borders, Pennsylvania has an interest in protecting its residents and in-state workers from discriminatory conduct.   *See, e.g.*, *Lomanno v. Black*, 285 F. Supp. 2d 637, 648 (E.D. Pa. 2003) (noting that while a state has an interest in "analyzing the employment practices of businesses within its borders," a state also "has a strong interest in analyzing whether employees working [within its borders] were discriminated against").   This factor therefore is neutral.

#### ii. District Courts' Familiarity with State Law

Next, defendant argues that New Jersey district courts are more familiar with New Jersey state law, which governs plaintiff's state-law claims.   Although it is desirable for a local federal court to determine issues of state law, *see Simmens*, 2007 WL 2007977, at *4, plaintiff's Amended Complaint alleges violations of both Pennsylvania and New Jersey's statutes.   Because the viability of plaintiff's Pennsylvania and New Jersey state-law claims is not presently before the Court,[3] both districts are equally well equipped to resolve the merits of the dispute.

---

[3] Defendant originally filed a Motion to Transfer Venue or, in the Alternative, Partial Motion to Dismiss, in which it sought dismissal of plaintiff's Pennsylvania state-law claims.   In response to plaintiff's filing of the Amended Complaint on September 10, 2013, defendant wrote a letter to the Court "seek[ing] clarification of the Court's expectation for a renewed motion to dismiss."   *See* Letter from Amy J. Traub, to Hon. Jan E. DuBois (Sept. 25, 2013).   By letter dated September 26, 2013, the Court advised defendant that "[n]otwithstanding the mooting of the partial motion to

Further, since both Pennsylvania and New Jersey state-law claims remain in the case, the Court cannot determine which state law will govern without a conflicts-of-law analysis. *See, e.g.*, *McFadden v. Burton*, 645 F. Supp. 457, 464-65 (E.D. Pa. 1986) (performing a choice-of-law analysis to determine whether the NJLAD or the PHRA applies). This analysis often is more appropriately undertaken at the summary-judgment stage of litigation. *See, e.g.*, *Buckley v. Power Windows & Siding, Inc.*, No. 09-cv-3162, 2010 WL 3981978, at *3 (D.N.J. Oct. 7, 2010). Transferring the case to the District of New Jersey would not circumvent the choice-of-law issue and, if anything, transfer would counterproductively require the District of New Jersey to apply Pennsylvania conflict-of-law rules. *See Ferens v. John Deere Co.*, 494 U.S. 516, 519 (1990) ("[T]he transferee court must follow the choice-of-law rules that prevailed in the transferor court").

### iii.   Enforceability of a Potential Judgment

Next, defendant argues that it would be easier to enforce a judgment in New Jersey. The Court finds this argument — based solely on the fact that defendant maintains New Jersey headquarters — to be without merit. Even putting aside the fact that defendant has a Pennsylvania office, it is widely recognized that "unlike enforcing a judgment in a foreign country, . . . there is little significant difference in enforcing a judgment in one federal forum than in another." *E'Cal Corp. v. Office Max, Inc.*, No. 01-cv-3281, 2001 WL 1167534, at *4 (E.D. Pa. Sept. 7, 2001).

---

dismiss, the Court w[ould] rule on the Motion to Transfer Venue in due course," and that defendant either could "proceed with the filing of a partial motion to dismiss the amended complaint or it c[ould] await a ruling on the Motion to Transfer Venue." Defendant has not filed a renewed motion for partial dismissal following the Court's denial, by Order dated September 27, 2013, of the part of defendant's motion seeking partial dismissal as moot.

*iv.   Expediency and Expense of Discovery and Trial*

Finally, defendant contends that discovery and trial would be more expeditious[4] and less expensive in the District of New Jersey.   In particular, defendant argues that "[s]erving an in-state company . . . would be less costly" and that transfer would "reduc[e] the practical burdens and expenses that accompany long-distance travel."   Mem. of Law in Supp. of Def.'s Mot. to Transfer Venue, or in the Alternative, Partial Mot. to Dismiss at 14 (Document No. 12-1).   The Court finds such practical considerations insufficient to warrant transfer.   First, it makes little sense to transfer a case to spare plaintiff the cost of service of process where it is plaintiff who opposes transfer.   Second, "[g]iven the proximity of the Eastern District of Pennyslvania and the District of New Jersey, . . . practical considerations do not render one forum significantly more convenient than the other."   *Connors v. UUU Prods., Inc.*, No. 3-cv-6420, 2004 WL 834726, at *6 (E.D. Pa. Mar. 15, 2004).

## V.   CONCLUSION

Based on the evidence provided by the parties, the Court declines to disturb plaintiff's choice of forum.   Because the forum-selection clause in plaintiff's employment contract does not bear on defendant's Motion to Transfer Venue, the Court gives plaintiff's choice of her home forum — the Eastern District of Pennsylvania — substantial weight, particularly in light of the Court's finding that the operative facts occurred in both the Eastern District of New Jersey and the District of New Jersey.   Moreover, the Court concludes there is little merit to defendant's arguments that transfer is necessary because of the enforceability of a potential judgment, the respective courts' familiarity with state law, or New Jersey's interest in deciding local

---

[4] Although defendant argues that discovery and trial would be more expeditious in the District of New Jersey, it does not address the relative docket congestion in the two districts, and thus, the Court will not consider this factor.

controversies.   Defendant's argument in favor of transfer therefore comes down to considerations of practicality and convenience, factors which have negligible import given the proximity of the two districts and the lack of evidence that witnesses and/or documents would be unavailable in the Eastern District of Pennsylvania.

After considering the private and public factors, the Court concludes that a transfer of venue is not in the interest of justice.   For all the foregoing reasons, the Court denies defendant's Motion to Transfer Venue.   An appropriate order follows.